The Court refused to give the instruction prayed by the defendant’s counsel.
Cranch, J.,
contra. O’Neale would not have been entitled to the surplus, if there had been any, on the sale to Ross, and therefore ought not to be liable for the deficit. That is, as he would not have been entitled to the difference between what he agreed to pay to the commissioners for the lots, and what they would have received from Ross, if they had sold to Ross for a greater sum than O’Neale had agreed to give; the plaintiffs have no right to charge the defendant with the difference in the present ease. The counsel for the plaintiffs has contended that O’Neale would have been entitled to the surplus, if any, and therefore he is liable for the deficit. If O’Neale would have been so entitled, the case would stand thus:
Suppose the 1st sale to Morris & Greenleaf was for $100
the sale to O’Neale for 50
the sale to Ross for 150
which last sum the plaintiffs have received; what then would be the rights of the parties ?
O’Neale would be entitled to receive • ' $100
And the Act of 1793 says the commissioners shall retain the amount due from the first purchaser, Morris & Greenleaf, ^00 which make $200
But the whole sum is only $150, which shows it to be impossible that such should be the rights of the parties. Then the right of O’Neale or of the commissioners must be withdrawn. But the right of the commissioners to retain $100 due from Morris & *274 Greenleaf, is supported by the express words of the Act of 1793. The right of O’Neale .is only supported by implication and analogy. The impossibility that both rights can exist at the same time, totally destroys that implication. The right of O’Neale to the surplus, therefore, cannot exist; it must yield to the superior right of the commissioners. The ground, therefore, on which the plaintiffs’ counsel relies, is gone.
The question then, is, whether the plaintiffs can recover on the notes, if O’Neale would not have been entitled to the surplus, if there had been any, on the sale to Ross ? The notes were given for the purchase of lots, which lots the plaintiffs have sold to others since the notes became payable. It is true the notes were originally given on a valuable consideration, viz., the plaintiffs’ promise to convey the lots on payment of the money. After the default of the defendant in not paying the notes, the plaintiffs were no. longer bound to convey the lots ; they had then a right to disaffirm the agreement, and the defendant, on tendering the money after the day of payment, could not recover damages at law against the plaintiffs for not conveying the lots. The plaintiffs had a right to release the defendant from the contract. Have they done so ? If they have not at law, they clearly have in equity. If O’Neale is not entitled to the benefit of the sale to Ross, and the plaintiffs are entitled to recover upon the notes, they are entitled to recover the whole sum. But if they should recover judgment at law, the defendant would enjoin the judgment in equity; and upon showing that the plaintiffs at law had sold the property to another and received its value, equity would decree that the money arising from the sale, should go in discharge of the notes.
The sale by the plaintiffs to Ross, was either in affirmance or in disaffirmance of their sale to the defendant. If it was in affirmance, then the sale to Ross was at the risk and for the benefit of the defendant. And if the sale in this case was at the risk of the defendant, it would have been for his benefit, if the sale had produced more than his notes. The principle must be the same in both cases. There can be no middle principle which can make him liable for the loss, and not give him the chance of gain. If there had been a surplus on the sale to Ross, there is no principle by which the defendant could be credited for no more than the amount of his notes. But I have shown that the defendant could not by law receive the benefit of the sale to Ross. Hence the sale to Ross cannot be considered as in affirmance of the contract with the defendant. It must, therefore, be in disaffirmance of that contract. But the plaintiffs must be consistent throughout. They cannot disaffirm for the purpose of selling the lots to Ross, and at *275 the same time affirm it by holding the defendant liable on his notes.
The resale, authorized by the Act of 1793, is in affirmance of the contract of sale to the first purchaser. The lots are resold, not as the property of the commissioners, but of the first purchaser. So on a bill in chancery by a vendor of land, praying for a sale of the land to satisfy the purchase-money due from the vendee to the vendor, such a decree and such a sale are made in affirmance of the first contract; and the land is sold under the decree, not as the land of the vendor, (the complainant in equity,) but of the vendee. Such decrees are grounded on the idea that the vendor has a specific lien only on the land, like a mortgage, and that the vendee is entitled to the benefit of the increased value of the thing sold, if its value has increased, and liable for its depreciation, if its value has been diminished. It is founded on the principle, that by the contract, the right to the land is transferred to the vendee, and the right to the purchase-money to the vendor. Hence it was just and equitable, that, on the resale by the commissioners, (which by the Act of 1793 is substituted for a resale under a decree in chancery,) the surplus, after retaining the amount of the first purchase-money, should be paid over to the first purchaser.
' If is important to bear in mind, that when the commissioners resell a lot under that Act of Assembly, they do not sell it as their own property, but as the property of the first purchaser. They act as his agents or trustees, and not in their own right. But the Act of Assembly was made for the sole benefit of the commissioners, as agents of the public, and to enable them to collect the public money. It was not intended to apply to sales made by individuals; it meant to embrace those sales only which the commissioners should make as agents for the public, and not those which they might make as the agents or trustees of an individual. The Act of Assembly operates, merely as a statutory decree for the resale of all lots sold by them as agents for the public, upon default being made by the first purchaser, and it is only for his default, and to satisfy his debt to the public. The commissioners, for this purpose, stand in the place of a trustee appointed to sell under a decree in chancery. The Act of Assembly does not say whether the resale shall be for cash, or on credit; nor does it expressly leave that matter to the discretion of the commissioners. But as the object of the act is to raise money from the resale of the lots, and as the act does not' authorize a resale, but for the default, and as the property of the first purchaser, it is a fair inference, that they- were obliged to sell for cash; or, that if they resold on credit, the resale was to be considered void, unless the money was duly paid, according to the terms of such resale.
*276 The act authorized them to sell only the properly of the first purchaser. Upon the fault of the second purchaser, the commissioners could not sell to a third purchaser'without considering the second sale as void; because, as they were only authorized to sell the right of the first purchaser, and as they had once sold that, there was nothing left for them to sell while the second sale remained valid. Again, the parties to the second sale had certainly a right by mutual assent to dissolve the contract. The commissioners have given the most unequivocal evidence of such assent on their part, because they have done that act which they could not lawfully do while that contract remained in force. They have sold and conveyed to another the very subject-matter of the contract. No written instrument, no solemn specialty, could more clearly demonstrate its dissolution. The assent of the defendant- to the same dissolution was evidenced (prior to that of the commissioners) by his refusal to pay the notes. By that act he waived the contract, and at law could never insist upon its performance. His assent is further testified by the present defence which he now sets up.
The commissioners, having no right to sell for the default of O’Neale, and having no right to sell the lots as the property of O’Neale, but having sold for the default of Morris & Greenleaf, and as their property, (for whose default and as whose property only they'were authorized by the act to sell) have completely dis-affirmed the contract with O’Neale; and, having done so, they must act consistently throughout: the disaffirmance goes back to the inception of the contract, and prevents them from saying there was any consideration for the notes at the time they, were given.
Verdict and judgment for the plaintiffs. (Reversed by the Supreme Court of the U. S. 6 Craneh, 301.)